EASTERN STATES PUBLIC SERVICE CORPORATION, a corporation created by and existing under the laws of the State of Delaware,

vs.

ATLANTIC PUBLIC UTILITIES, INC., a corporation created by and existing under the laws of the State of Delaware.

EASTERN STATES PUBLIC SERVICE CORPORATION, a corporation created by and existing under the laws of the State of Delaware,

vs.

ATLANTIC PUBLIC SERVICE ASSOCIATES, INC., a corporation created by and existing under the laws of the State of Delaware.

EASTERN STATES PUBLIC SERVICE CORPORATION, a corporation created by and existing under the laws of the State of Delaware,

vs.

NORTH AMERICAN WATER WORKS AND ELECTRIC CORPORATION, a corporation created by and existing under the laws of the State of Delaware.

EDWIN B. DEWEY,

vs.

KEYSTONE WATER WORKS AND ELECTRIC CORPORATION, a corporation created by and existing under the laws of the State of Delaware.

*New Castle, May 18, 1931.*

*Hugh M. Morris* and *Christopher L. Ward, Jr.*, of the firm of Marvel, Morford, Ward & Logan, and *John Fletcher Caskey*, of the firm of Hughes, Schurman & Dwight, of New York City, for receivers.

*H. C. Bangs*, of the firm of Chapman & Cutler, of Chicago, Illinois, for reorganization committee.

*A. C. Smith*, of the firm of Humes, Buck, Smith & Stowell, of New York City, for purchaser.

*Charles C. Keedy* and *Enos Booth*, of New York City, for seven per cent. cumulative preferred stockholders of Atlantic Public Service Associates, Inc.

*Ayres J. Stockly*, of the firm of Hastings, Stockly & Morris, and *Archibald Palmer*, of New York, for bondholders of North American Water Works & Electric Corporation.

*John J. Morris, Jr.*, for Class A stockholders of Atlantic Public Utilities, Inc.

THE CHANCELLOR. As ordered by the court, notice of the filing of the petitions was sent to all creditors in interest and stockholders advising them of the time and place when the same would be heard, and of where the plan together with audits of the

affairs of the four corporations was lodged for inspection. The notice also advised that exceptions, if any, to the plan and proposed sales, should be filed within a specified time.

Certain objections in the form of letters addressed to the Chancellor have been informally presented. These objections, however, consist of nothing more than mere protests on the part of persons whose chief complaint appears to be that, if the plan is carried out, their investments will prove grievously disappointing. No reason is attempted to be shown, however, by these informal exceptants as to why the proposed plan of reorganization is unfair and therefore should be discarded.

Three groups have formally excepted. One of these groups representing about forty per cent. of the outstanding seven per cent. cumulative preferred "A" stock of Atlantic Public Service Associates, Inc., after hearing the plan explained and listening to the testimony adduced in explanation of the process by which the allocation of new securities was arrived at, through its solicitor, withdrew its exceptions.

The two remaining groups adhere to their objections. Upon the substantial justice and merits of the plan, however, they have pointed to nothing which would warrant its disapproval. They have offered no alternative suggestion whereby the present security holders might be saved more of participation in the future operation of the properties which now compose the Atlantic Public Utilities system than the present plan gives them. Their attitude, therefore, is one simply of opposition. If their views be accepted, the assets must be sold at a not very distant date under circumstances which, in the absence of some preconceived plan of rehabilitation of the system, will doubtless prove sacrificial.

It appears to the court that the trouble with this system of some ninety or one hundred utility companies, which led to receiverships for the parent holding company and its principal subsidiaries, consisted in this—that a capital structure was pyramided upon a foundation of values which was far too small to support it. The consequence is that in any reorganization that can hope to endure, the capital excess now existing must be

eliminated and a new capital structure created which will more closely approximate in size the values of the assets that underlie and support it. This is what the proposed plan seeks to accomplish. In doing it, this plan as indeed any other one that might aspire to endurance, necessarily requires that the existing securities must, in proportion as their values are decreased by remoteness of their equities from the assets of the system, suffer a serious curtailment. Some of them are so far attenuated as to have nothing of substance left. These, which are represented by one of the exceptants, are dropped altogether from participation in the proposed reconstructed system. Others of them are shorn of a portion at least of their inflation. While the holders of some of those that are to be dropped entirely and the holders of some of those that are to be pared down protest against the proposed operation, yet nothing has been shown to the court which indicates that the result is unjust or inequitable, for it is to be borne in mind that there can be no injustice in refusing to allow more of value to an asset than it actually possesses. On the showing made, nothing has been pointed out indicating that the allocation of new securities is based upon other than the comparative values of the participating old ones. Such being the case the plan is such as is entitled to the approval of the court and orders of sale should be entered to the end that an opportunity may be afforded the reorganization committee to bid in the assets and thereby, if they are successful bidders, to go forward with the plan.

Two objections were urged which do not appeal to me as of weight. One of these is that there is no guarantee that the new interests who, under the plan, are to furnish something over six million dollars of new money, will after a sale go forward with the plan. If there be any merit to this, the matter can be very well taken care of before confirmation. The other objection is that after the new company is established, those in control of it might make an unjust use of the power to issue certain bonds that are contemplated to be authorized. To this it is sufficient to say, that there is no reason for assuming that the directors and officers of the new company would breach their duty. If they do, ample remedies may be found to curb or call them to account. This

sort of objection is a mere speculative apprehension and even as such is not peculiar to this plan but general with respect to all corporations.

The plan will be approved and sales ordered, to the end that an opportunity may be afforded to further and carry the plan into effect.

# CASES

IN THE

# SUPREME COURT

ON APPEALS FROM THE

## COURT OF CHANCERY